# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| MASTER SADDLES INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-3709-B |
| | § | |
| FALLON TAYLOR, JOAO LEAO, and | § | |
| RANCH DRESS'N LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court in this trademark infringement action is a Rule 12(b)(6) motion to dismiss

filed by Defendants Fallon Taylor, Joao Leao, and Ranch Dress'n LLC (Doc. 11). For the reasons

that follow, Defendants' motion is **DENIED**. Further, in the interest of justice, the Court *sua sponte*

grants Plaintiff Master Saddles Inc. leave to amend its complaint to demonstrate liability under the

doctrine of gray-market goods and the doctrine of foreign equivalents.

## I.

## BACKGROUND[1]

Nonparty Nacional Ind. E Com. De Selas Do Brasil Ltda. ("Selas Do Brasil") is a Brazilian

manufacturer of saddles. Doc. 1, Compl., ¶ 11. Plaintiff "is the exclusive North American distributor"

of Selas Do Brasil's saddles. *Id.* Through Plaintiff, Selas Do Brasil markets and sells its saddles in the

---

[1] Defendants dispute the veracity of many of the allegations in Plaintiff's complaint. Doc. 11, Defs.'
Mot., 1 ("Plaintiff's Complaint draws dangerously close to the line between creative pleading and outright
fraud on the Court."). Nonetheless, the Court draws its factual account from the allegations set forth in the
complaint and takes them as true, as it must at this stage. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191,
205 (5th Cir. 2007) (citation omitted)).

United States under the trademark MASTER SADDLES ("the Mark"). *Id.* ¶ 15. Plaintiff is the "exclusive licensee" of the Mark "in connection with saddles." *Id.* ¶ 16. According to Plaintiff, it "has been assigned all rights to claims" arising from infringement of the Mark and "is authorized to exercise" all rights in the Mark. *Id.* ¶¶ 18–19.

"Defendant Fallon Taylor is a former professional" champion barrel racer. *Id.* ¶ 29. She "sells retail apparel and horse tack online" on her website, fallontaylor.com, and on Defendant Ranch Dress'n LLC ("Ranch Dress'n")'s website, ranchdressn.com. *Id.* ¶¶ 33–35. According to Plaintiff, Defendant Joao Leao is a "barrel racer and horse trainer" who "works at Ms. Taylor's ranch and generally assists Ms. Taylor with her various business pursuits." *Id.* ¶¶ 37–38.

"In about late-2019 to early-2020," Taylor and Ranch Dress'n "began selling saddles branded with the mark MASTER SELAS" ("the Label") on their websites. *Id.* ¶ 39. "The English translation of the Brazilian word 'selas' is 'saddles,'" and, according to Plaintiff, "[t]he English equivalent of the MASTER SELAS mark is MASTER SADDLES." *Id.* ¶¶ 13–14. Plaintiff alleges that "Mr. Leao arranged for [Taylor] and [Ranch Dress'n] to import these saddles from ProTec Horse [('ProTec')], a Brazilian retailer of horse tack and other equine products." *Id.* ¶ 40. According to Plaintiff, Selas Do Brasil manufactures ProTec's saddles, "but the saddles are substantially different from saddles sold under the MASTER SADDLES mark." *Id.* ¶ 41. In particular, ProTec's saddles "are manufactured with a different saddle tree[2] than those produced for [Plaintiff]"; ProTec "attaches its own trademark," in addition to the Label, to its saddles; and Plaintiff's "warranty and customer support

___

[2] A saddletree is "the frame of the saddle[.]" *Saddletree*, MERRIAM-WEBSTER'S DICTIONARY (online ed.).

are superior" to ProTec's. *Id.* ¶¶ 44–46. Nevertheless, Plaintiff avers, Defendants advertise ProTec's saddles "as identical" to Plaintiff's saddles. *Id.* ¶¶ 48–49.

According to Plaintiff, Defendants' use of the Label on saddles in the United States "has caused actual confusion." *Id.* ¶ 51. Plaintiff posits that "[n]umerous of Defendants' customers have mistakenly contacted [Plaintiff] for warranty work or to try to return the saddle Defendants[] sold them after being unhappy with the saddle tree." *Id.* ¶ 52. But "[d]espite Plaintiff's repeated demands" to cease, Defendants have continued to sell saddles bearing the Label. *Id.* ¶ 53.

Plaintiff filed this civil action in December 2020 alleging: (1) trademark infringement and unfair competition under the Lanham Act and common law against all Defendants, and (2) contributory trademark infringement and unfair competition against Leao only. *See generally id.* Defendants filed the pending motion to dismiss on January 26, 2021, seeking dismissal of Plaintiff's complaint in full on several alternative grounds. The motion is fully briefed and ripe for review.

## II.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). If a plaintiff's complaint fails to state such a claim, Rule 12(b)(6) allows a defendant to file a motion to dismiss. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Katrina Canal*, 495 F.3d at 205 (quotation marks omitted) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be

granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citation omitted).

To survive a motion to dismiss, a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 547 U.S. 10, 12 (2014). That means "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

## III.

## ANALYSIS

Defendants seek dismissal on the grounds that Plaintiff lacks statutory standing to assert its claims, Plaintiff has not demonstrated a likelihood of customer confusion, Plaintiff fails to state a claim for individual and contributory liability, and Defendants' use of the Label is protected under the first-sale doctrine. *See generally* Doc. 11, Defs.' Mot. The Court addresses each of Defendants' arguments for dismissal below. Finding that each fails, the Court denies Defendants' motion. The Court, however, also affords Plaintiff leave to amend its complaint to demonstrate liability under the doctrine of gray-market goods and the doctrine of foreign equivalents.

A.    *Plaintiff Has Statutory Standing to Sustain Claims Under 15 U.S.C. § 1125(a)(1).*

Defendants' primary argument for dismissal is that Plaintiff lacks standing to bring its claims under the Lanham Act. *Id.* at 9–10. Defendants argue that Plaintiff does not own the Mark, and the Lanham Act provides protection for mark owners only. *Id.* at 10. Plaintiff points out, however, that in advancing this argument Defendants rely on the standing provisions for sections of the Lanham Act that Plaintiff does not invoke. Doc. 14, Pl.'s Resp., 4. Indeed, Plaintiff frames both of its Lanham Act claims under § 1125(a), *see* Doc. 1, Compl., ¶¶ 59, 66, while Defendants cite 15 U.S.C. §§ 1114(1) and 1125(c) and cases interpreting these provisions. Doc. 11, Defs.' Mot., 9–10.

A person has statutory standing if his or her claim "fall[s] within the zone of interests protected by" the statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (citation omitted). Section 1125(a)(1) prohibits the "use[] in commerce any word, term, [or] name" that:

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

§ 1125(a)(1). This section generally prohibits unfair competition by creating a civil action for "infringement of even unregistered marks," under Subsection A and for "false advertising" under Subsection B. *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:9 (5th ed. 2021). These causes of action under § 1125(a)(1) are available to "any person who believes that he or she is likely to be damaged" by the prohibited conduct. § 1125(a)(1).

In the Fifth Circuit, "exclusive distributor[s]" of trademarked goods have statutory standing to bring claims under § 1125(a). *Martin's Herend Imps., Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1301 n.10 (5th Cir. 1997) (citing *Norman M. Morris Corp. v. Weinstein*, 466 F.2d 137, 142 (5th Cir. 1972)). Defendants argue otherwise, citing § 1114(1) and *Neutron Depot L.L.C. v. Bankrate, Inc.*, 798 F. App'x 803 (5th Cir. 2020) (per curiam). Doc. 11, Defs.' Mot., 9–10. But these authorities are inapposite. While recovery under § 1114(1) is limited to the "registrant" of a registered trademark, § 1114(1), Plaintiff's complaint nowhere invokes § 1114. *See generally* Doc. 1, Compl. Likewise, while § 1125(c) extends protection only to "the owner of a famous mark," § 1125(c), Plaintiff does not bring an action under § 1125(c). *See generally* Doc. 1, Compl. Rather, as mentioned above, Plaintiff styles its Lanham Act claims under § 1125(a), under which, as the exclusive North American distributor of saddles bearing the Mark, Plaintiff *does* have standing to sue for infringement of the mark. *Martin's Herend*, 112 F.3d at 1301.[3]

Defendants argue that the statutory standing rules "under both Sections 32(1) [(§ 1114)] and 43(c) [(§ 1125(c))] [are] considered the same by the Fifth Circuit." Doc. 17, Defs.' Reply, 5 (emphasis omitted). Be that as it may, Defendants cite no authority holding that statutory standing under § 1125(a) is as limited as under § 1114(1) and § 1125(c). *See id.* (citing *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 597 (5th Cir. 2003) (§ 1125(c)); *Neutron Depot*, 798 F. App'x at 806) (§ 1114 and § 1125(c)). Instead, Defendants attack Plaintiff's reliance on *Martin's*

---

[3] Generally, § 1125(a)(1) is the vehicle to assert infringement of an unregistered mark, while § 1114(1) is the vehicle to assert infringement of a registered mark. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 144–45 (2015). The complaint alleges that, at the time of filing, the Mark had been "*approved* for registration by the United States Patent & Trademark Office," so the Court assumes that the misconduct Plaintiff alleges is infringement upon an unregistered trademark. Doc. 1, Compl., ¶ 17 (emphasis added).

*Herend*, noting that it is "decades-old," and arguing that since its issuance, the Fifth Circuit has changed its rule. *Id.* at 5–6 (citing *Neutron Depot*, 798 F. App'x at 806, as updating the statutory-standing rule). But *Neutron Depot* only assessed statutory standing under §§ 1114(1) and 1125(c). *See* 798 F. App'x at 805. In fact, the district court *denied* the defendant's motion to dismiss the plaintiff's claim under § 1125(a)(1)(A) on statutory standing grounds, and that decision was not on appeal in *Neutron Depot*. *Id.* Thus, *Neutron Depot* is not as sweeping as Defendants interpret it, and it coexists with *Martin's Herend* (which itself is plenty recent, good law).

Defendants also argue *Martin's Herend* "acknowledge[d] the existence of a question of standing but decline[d] to rule on such[.]" Doc. 17, Defs.' Reply, 5. The Court disagrees. Faced with an argument that the plaintiffs (one "the registrant and owner of the trademark" and the other "an exclusive distributor") lacked statutory standing to bring their claims under the Lanham Act, the Fifth Circuit explicitly held that the distributor had "standing to sue for unfair competition under 15 U.S.C. § 1125, even if it lack[ed] standing to sue for trademark infringement under 15 U.S.C. § 1114." *Martin's Herend*, 112 F.3d at 1301 n.10 (citing, *inter alia*, *Norman M. Morris*, 466 F.2d at 142). This is, in fact, a ruling. And its effect here is clear: Plaintiff has standing to bring its claims as the exclusive distributer of saddles bearing the Mark.

In sum, because Plaintiff brings its Lanham Act claims under § 1125(a), which affords standing to exclusive distributors, the Court rejects Defendants' argument that Plaintiff lacks standing to bring its Lanham Act claims.

B.    *Plaintiff Has Adequately Alleged Likelihood of Consumer Confusion.*

The Court now turns to Defendants' secondary argument for dismissal—that Plaintiff has not adequately alleged consumer confusion. Doc. 11, Defs.' Mot., 11.[4] First, Defendants argue that Plaintiff cannot establish likelihood of confusion as a matter of law because the saddles bearing the Mark and the allegedly infringing saddles bearing the Label are manufactured by the same entity, thus the parties are not competitors. *Id.* Next, Defendants argue that Plaintiff's complaint fails to allege adequate facts under the confusion factors. *Id.* at 12. In response, Plaintiff argues it is entitled to a presumption of consumer confusion under the doctrine of gray-market goods. *See* Doc. 14, Pl.'s Resp., 5–7. Alternatively, Plaintiff argues that it has adequately alleged facts supporting the confusion factors. *Id.* at 10–11. The Court addresses each of these contentions below.

First, the Court rejects Defendants' assertion that Plaintiff's complaint fails as a matter of law on the ground that the parties are not competitors. Defendant argues that because Selas Do Brasil manufactures both the saddles bearing the Mark and the saddles bearing the Label, Plaintiff cannot establish confusion between its own mark and a mark of its competitor. Doc. 11, Defs.' Mot., 11 (citations omitted). But Defendants cite no authority supporting their position that a common

_____

[4] Likelihood of consumer confusion is an essential element of all Plaintiff's claims. *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 762 (N.D. Tex. 2013) ("Unfair competition claims under the Lanham Act are governed by the same standard as those for trademark infringement, e.g., the likelihood of confusion." (citing *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483 (5th Cir. 2004)); *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.7 (5th Cir. 2010) ("A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions." (internal quotation marks and citation omitted)); *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 592 (5th Cir. 1993) ("As with trademark infringement, the touchstone of a section 1125 unfair competition claim is whether the defendant's actions are 'likely to cause confusion.'").

manufacturer precludes a finding that litigants are competitors. *See generally id.*; *see also generally* Doc. 17, Defs.' Reply. And the Court can find none.

The Court also disagrees with Plaintiff's contention that it is entitled to a presumption of confusion under the doctrine of gray-market goods, as the doctrine was not fairly raised by the complaint. *See* Doc. 14, Pl.'s Resp., 5–6; *see generally* Doc. 1, Compl.

"A gray-market good is a foreign-manufactured good, bearing a valid United States trademark, that is imported without the consent of the United States trademark holder." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 285 (1988). To prevent consumer confusion, the importation of gray-market goods is prohibited. *See Bourdeau Brothers v. Int'l Trade Comm'n*, 444 F.3d 1317, 1320 (Fed Cir. 2006) (citation omitted). "To the extent that foreign goods bearing a trademark have different characteristics than those trademarked goods authorized for sale in the United States, the public is likely to become confused or deceived as to which characteristics are properly associated with the trademark, thereby possibly eroding the goodwill of the trademark holder in the United States." *Id.* (citation omitted). "To allege a trademark infringement claim in the gray-market goods context, the plaintiff must allege that 'the defendant's foreign goods are materially different' from the authorized goods." *Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. de C.V.*, —F. Supp. 3d—, 2021 WL 359255, at *6 (W.D. Tex. 2021) (quoting *Martin's Herend*, 112 F.3d at 1301–02). If the plaintiff does so, courts "presume[] a likelihood of confusion as a matter of law[.]" *See Martin's Herend*, 112 F.3d at 1301.

Here, Plaintiff has not sufficiently pleaded the gray-market goods doctrine such that it can rely upon the doctrine to defend its claims. Plaintiff raises the doctrine of gray-market goods for the first time in its response. *See* Doc. 14, Pl.'s Resp., 5–6. In doing so, Plaintiff appears to invoke the

doctrine as an alternative avenue for liability. *See id.* at 7. But, as detailed above, the doctrine implicates specific pleading requirements of its own. And the complaint lacks reference to the doctrine of gray-market goods, let alone allegations tailored to such theory. *See generally* Doc. 1, Compl. Thus, the Court declines to assess the application of the doctrine of gray-market goods and finds that Plaintiff is not entitled to any presumption of confusion at this juncture. *See Sheddy v. JPMorgan Chase Bank, N.A.*, 2013 WL 5450288, at *5 (N.D. Tex. Sept. 30, 2013) ("Plaintiff is not entitled to add new claims to his complaint by way of his response." (citation omitted)); *see also St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991) ("A court which considers a motion for a 12(b)(6) . . . dismissal must look only at the pleadings . . . .") (citation omitted)).

The Court now turns to the likelihood of consumer confusion, an essential element of all of Plaintiff's claims. *See supra* at 8 n.4. In determining whether there is a likelihood of consumer confusion, the Court considers several factors. These factors—the "digits of confusion"—are:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion.

*Dall. Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 636 (N.D. Tex. 2009) (citing *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000); *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 543 (5th Cir. 1998)). "In the context of a Rule 12(b)(6) motion, the district court assesses whether the facts alleged, taken as true, demonstrate that a likelihood of confusion is plausible." *Transparent Energy LLC v. Premiere Mktg. LLC*, 2020 WL 4678438, at *5 (N.D. Tex. July 28, 2020) (citations omitted), *R. & R. adopted sub nom.*, *Transparent*

*Energy, LLC v. Premier Mktg., LLC*, 2020 WL 4673102 (N.D. Tex. Aug. 12, 2020). The Court conducts this assessment below.

### 1.   Type of Mark

A mark is either generic, descriptive, suggestive, or arbitrary and fanciful. *Dall. Cowboys*, 616 F. Supp. 2d at 637. The more arbitrary or fanciful the mark, the stronger it is—and the more likely an infringing mark could cause consumer confusion. *See id.* "A generic term refers to a particular genus or class of which an individual article or service is but a member[.]" *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 (5th Cir. 1980) (quotation marks and citation omitted). "[I]t suggests the 'basic nature of articles or services.'" *Id.* (quoting *Am. Heritage Life Ins. Co.*, 494 F.2d 3, 11 (5th Cir. 1974)). "A descriptive term identifies a characteristic or quality of" the item, such as "its color, odor, function, dimensions, or ingredients." *Id.* (quotation marks and citation omitted). Meanwhile, a "suggestive term suggests, rather than describes, some characteristic of the goods to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of those goods." *Id.* at 1184 (quotation marks and citation omitted). Finally, "[a]rbitrary or fanciful terms . . . bear no relationship to the product or service with which they are associated." *Id.* (quotation marks omitted).

When a mark contains generic and nongeneric components, "the nongeneric components . . . must be compared in the context of the overall composite mark[.]" *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 491 (2d Cir. 1988) (citing 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 23:15(G) (2d ed. 1984)). For example, in an action alleging infringement of a mark for vaccines against "Haemophilus influenzae type b diseases," the marks "HibVax" and "HIB-IMUNE" were deemed descriptive. *Am. Cyanamid Corp. v. Connaught Lab'ys, Inc.*, 800 F.2d 306, 307,

309 (2d Cir. 1986). The court noted that "Hib" was "[o]ne generic term" for the disease prevented by the vaccines while "VAX" and "IMUNE" described the purpose of the products. *Id.* at 307, 309. Thus, taken together, the marks were descriptive. *See id.* at 308. Moreover, in an action alleging infringement of marks for roach traps, the mark "ROACH MOTEL" was deemed "at least . . . suggestive" if "not altogether . . . arbitrary[.]" *Am. Home Prods. Corp. v. Johnson Chem. Co.*, 589 F.2d 103, 106 (2d Cir. 1978). The Second Circuit reasoned that "[w]hile roaches may live in some motels against the will of the owners, motels are surely not built for roaches to live in. Hence the mark is fanciful in conception." *Id.*

Here, neither party briefs whether the Mark is generic, descriptive, suggestive, or arbitrary and fanciful. For the purpose of resolving this motion, however, the Court finds the Mark suggestive. As an initial matter, "saddles" used in association with saddles is certainly generic. *See Soweco*, 617 F.2d at 1183 (citations omitted). And, while the nongeneric term "master" may be entirely arbitrary with respect to saddles, the Court must consider it in the context of the "overall composite mark[.]" *Banff*, 841 F.2d at 491. And the Court cannot conclude that a mark containing the word "saddles," used in association with saddles, is arbitrary. *See Soweco*, 617 F.2d at 1184 (noting that arbitrary marks "bear no relationship to the product[s] . . . with which they are associated"). Rather, in this context, the Court finds that "master" is likely intended to suggest that the saddles at issue are of high quality. Thus, the Court finds the Mark suggestive, and this factor weighs in favor of finding consumer confusion.

## 2. Similarity of the Marks

Courts assessing the similarity of marks compare the appearance, sound, and meaning of the marks. *Dall. Cowboys*, 616 F. Supp. 2d at 638 (citation omitted). The Court notes that Defendants

do not argue that the *marks* are dissimilar. *See generally* Doc. 11, Defs.' Mot., 12–13. Rather, Defendants focus on the differences in the products upon which the marks are affixed. *See id.* In response, Plaintiff argues that the marks are sufficiently similar, and consumer confusion is likely. Doc. 14, Pl.'s Resp., 10–11.

As a preliminary matter, Plaintiff argues that the marks are similar under the doctrine of foreign equivalents. *Id.* at 11. But the Court rejects Plaintiff's invocation of the doctrine. Under the doctrine of foreign equivalents, "marks using foreign terms that have the same meaning as senior, English-language marks should be held confusingly similar to the English marks if an 'appreciable' segment of American consumers is familiar with the foreign language." *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 714 n.14 (S.D. Tex. 2009) (citation omitted). Courts should employ the doctrine of foreign equivalents, however, "only when it is likely that the ordinary American purchaser would stop and translate [the foreign word] into its English equivalent." *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1377 (Fed. Cir. 2005) (quotation marks and citation omitted).

The complaint does not establish that the Mark and the Label are foreign equivalents. Plaintiff does not allege what portion of American consumers is familiar with Portuguese, let alone that this portion is an "appreciable segment of American consumers[.]" *Trendsetter Realty*, 655 F. Supp. 2d at 714 n.14 (quotation marks and citation omitted). And Plaintiff's cited authority does not persuade the Court that Portuguese is such a language with which an appreciable number of Americans is familiar. First, Plaintiff cites *In re Cordua Restaurants, Inc.*, 823 F.3d 594, 603 (Fed. Cir. 2016), to support its argument that an appreciable segment of American consumers is familiar with Portuguese. Doc. 14, Pl.'s Resp., 12. *Cordua* dealt with the registrability of the word "churrascos" in

connection with restaurant services. 823 F.3d at 598. Registration was denied on the ground that the term was generic—it merely described a restaurant featuring churrasco steaks. *Id.* Reviewing this decision, the Federal Circuit cited the doctrine of foreign equivalents, only in noting that "churrascos" is the Portuguese *and Spanish* translation of the word "barbecue[.]" *Id.* at 603. Importantly, *Cordua* does not hold that an appreciable segment of American consumers is familiar with Portuguese. *See generally id.*

Second, Plaintiff cites *In re Magnesita Refractories Co.*, 716 F. App'x 978, 981 (Fed. Cir. 2017), another registrability case applying the doctrine of foreign equivalents to determine the genericness of a mark. Doc. 14, Pl.'s Resp., 12. Notably, *Magnesita Refractories* also concerned an English word with a Portuguese *and Spanish* translation at issue. 716 F. App'x at 981. Likewise, *Magnesita Refractories* does not hold that an appreciable segment of American consumers is familiar with Portuguese. *See generally id.* Both cases cite the doctrine in connection with a Portuguese word, but neither supports Plaintiff's contention that the doctrine should apply here.

Next, the Court reviews Plaintiff's allegations relevant to the marks' appearance, sound, and meaning. *Dall. Cowboys*, 616 F. Supp. 2d at 638. The Court finds that Plaintiff's complaint adequately alleges similarity of the Mark and the Label. Plaintiff argues that the Mark and the Label are similar because "both marks consist of two words with four syllables total; both start with the dominant term MASTER; the second terms are both descriptive, start and end with 's,' and consist of two syllables; the marks sound similar; and they have identical meaning." Doc. 14, Pl.'s Resp., 11. The Court agrees. Though they are in different languages, "selas" and "saddles" sound similar. Paired with the dominant phrase "master," and both associated with saddles, it is plausible that consumers may be confused. The Court finds Plaintiff has adequately pleaded this confusion factor.

-14-

### 3. Similarity of Products

In assessing the similarity of the products, "exact similarity is not required." *Dall. Cowboys*, 616 F. Supp. 2d at 638. For example, in *Dallas Cowboys*, the court found two baseball caps "similar enough to confuse consumers" where, although the caps' primary colors were different, they "both feature[d] five-pointed stars on the bill, the words 'America's Team,' and the same overall color scheme." *Id.* at 639.

Here, Defendants argue that Plaintiff admits in its complaint that the saddles are different, "down to the materials used," and the Court agrees. Doc. 11, Defs.' Mot., 12. Indeed, Plaintiff alleges that the ProTec saddles "are substantially different from saddles sold under the" Mark. Doc. 1, Compl., ¶ 41. Further, Plaintiff alleges the saddles bearing the Label "are manufactured with a different saddle tree than those" bearing the Mark. *Id.* ¶ 44. There are no allegations in the complaint describing how, if at all, the saddles are similar to one another in composition. *See generally* Doc. 1, Compl. Moreover, other than noting that Defendants' saddles bear the ProTec mark in addition to the Label, there are no allegations in the complaint describing what each party's saddles look like, let alone allegations that the saddles look the same. *See generally id.*[5] Overall, Plaintiff fails to allege facts establishing similarity of the products such that consumers are likely to confuse the Mark and the Label.

---

[5] While Defendants allege in their motion that Defendants' saddles are sold only after they are used and signed by Taylor, Doc. 11, Defs.' Mot., 4—an allegation that, if true, would cut against the saddles' similarity—the Court does not take *Defendants'* allegations into account in deciding this motion.

4.     <u>Identity of Retail Outlets and Purchasers</u>

"Dissimilarities between the retail outlets for and the predominant consumers of [the parties']
goods lessen the possibility of confusion, mistake, or deception." *Amstar Corp. v. Domino's Pizza, Inc.*,
615 F.2d 252, 262 (5th Cir. 1980). Likewise, "[d]ifferences in the parties' customer bases can lessen
the likelihood of confusion." *Dall. Cowboys*, 616 F. Supp. 2d at 639 (citations omitted).

Here, the complaint alleges that Defendants retail their saddles online via Taylor's and Ranch
Dress'n's websites. Doc. 1., Compl., ¶¶ 33–34. It is, however, devoid of allegations regarding Plaintiff's
own retail outlets. *See generally id.* The complaint also lacks any allegations regarding the identity of
each party's primary purchasers or consumer base. *See generally id.* While Defendants suggest their
purchasers are individuals in the market for memorabilia, Doc. 11, Defs.' Mot., 14, the Court does
not credit such an allegation at this time.

Because the complaint lacks sufficient allegations regarding the retail outlets for Plaintiff's
saddles and the identities of both parties' purchasers, Plaintiff has failed to establish confusion is likely
based on this factor.

5.     <u>Identity of Advertising Media</u>

"The greater the degree of overlap in the marketing approaches of the two entities, the greater
the likelihood of confusion." *Dall. Cowboys*, 616 F. Supp. 2d at 639 (alterations incorporated and
quoting *Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 827 (S.D. Tex.
1999)).

Here, the complaint alleges "Mr. Leao has actively promoted the goods bearing the MASTER
SELAS mark on his personal social media accounts and elsewhere as identical to Master Saddles'
goods sold under the MASTER SADDLES mark." Doc. 1, Compl., ¶ 49. Moreover, Plaintiff states

that "Ms. Taylor and Ranch Dress'n, LLC began promoting her goods under the MASTER SELAS mark on [Taylor's and Ranch Dress'n's websites], social media, and elsewhere[.]" *Id.* ¶ 48. But as Defendants point out, Plaintiff has not alleged that the parties "use similar advertising media[.]" Doc. 11, Defs.' Mot., 13. Indeed, Plaintiffs have not alleged any type of advertising media it uses. *See generally* Doc. 1, Compl. In light of this deficiency, Plaintiff has not established that a likelihood of confusion is plausible with respect to the similarity of advertising media used by the parties.

6. Defendants' Intent

"If a plaintiff can show that a defendant adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone may be sufficient to justify the inference that there is confusing similarity." *Dall. Cowboys*, 616 F. Supp. 2d at 640 (quotation marks and citations omitted).

Plaintiff alleges the following facts regarding Defendants' intent: (1) it has made "repeated demands" that Defendants cease infringement, to no avail, Doc. 1, Compl., ¶ 53; and (2) Defendants are marketing their own saddles as identical to Plaintiff's, *id.* ¶¶ 48–49. The Court takes these allegations as true and finds Plaintiff's allegations plausibly allege Defendants' conduct is intentional.

7. Evidence of Actual Confusion

"Although not necessary to find a likelihood of confusion, the best evidence of likelihood of confusion is provided by evidence of actual confusion." *Dall. Cowboys*, 616 F. Supp. 2d at 640 (citation omitted). "To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion or consumer surveys." *Scott Fetzer Co.*, 381 F.3d at 486 (citations omitted).

Here, Plaintiff alleges that actual confusion has occurred. According to Plaintiff, "[n]umerous of Defendants' customers have mistakenly contacted Master Saddles for warranty work or to try to

return the saddle Defendants[] sold them after being unhappy with the saddle tree." Doc. 1, Compl., ¶ 52. Though this allegation is somewhat conclusory, it is more than a "[t]hreadbare recital[]" that confusion has occurred. *Iqbal*, 556 U.S. at 678 (citation omitted). The Court finds this allegation is sufficient to allege that confusion is plausible.

In sum, the Court finds that Plaintiff has adequately alleged facts suggesting that consumer confusion is plausible. On balance, four of the seven confusion factors are adequately pleaded. Thus, the Court will not dismiss Plaintiff's claims on the ground that it has not demonstrated consumer confusion.

C.     *Plaintiff Has Adequately Pleaded Individual and Contributory Liability.*

Next, Defendants argue that any claims against Taylor and Leao should be dismissed. Doc. 11, Defs.' Mot., 17. This argument is twofold: First, Defendants contend that because Plaintiff alleges Taylor and Leao are agents of Ranch Dress'n, and acts of a corporate agent are acts of the corporation, Plaintiff has not stated a claim for individual liability against Taylor and Leao. *Id.* Second, Defendants argue Plaintiff has not adequately alleged a claim for contributory liability against Leao. *Id.* at 18. The Court addresses each of these arguments below.

1.     Individual Liability

Defendants' argument regarding Taylor's and Leao's individual liability is a nonstarter. "Because of its very nature a corporation can act only through individuals." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). "Obviously . . . if there was an infringement by a corporation, this infringement was caused by some one or more persons either officers or employees of the corporation," but the corporation's liability does not relieve those individuals from independent liability. *Id.* (citing, *inter alia*, and quoting *Mead Johnson & Co. v. Baby's*

*Formula Serv., Inc*, 402 F.2d 19, 23 (5th Cir. 1968)). Indeed, "[r]equiring a piercing of the corporate veil to hold individuals liable [for trademark infringement] would be putting the cart before the horse." *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1349–50 (5th Cir. 1994) (citation omitted); *see also Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 541 (S.D. Tex. 2013) (Costa, J.) ("[A]n individual can be held personally liable if he actively and knowingly caused the infringement." (quotation marks and citation omitted)).

As noted above, the Court finds that Plaintiff has adequately alleged intent on the part of all Defendants. *See supra* Part III.B.6. Though the complaint contains some conclusory allegations regarding Defendants' intent, *e.g.*, Doc. 1, Compl., ¶¶ 60–61, 67, 74, 77, it also contains allegations that Defendants have continued in their conduct despite Plaintiff's requests to cease, as well as allegations that Defendants advertise their saddles as identical to Plaintiff's. For the reasons discussed above, these allegations plausibly suggest Defendants' conduct is intentional. Thus, the Court declines to dismiss Plaintiff's complaint on the ground that it fails to establish individual liability on the part of Taylor and Leao.

### 2. Contributory Liability

Defendants' argument regarding Leao's contributory liability is similarly unavailing. "[L]iability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances." *Inwood Laby's, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 853–54 (1982). This doctrine "has been extended from the factual context in which it first arose into other settings" beyond manufacturers and distributors. *Eclipse Aesthetics LLC v. Regenlab USA, LLC*, 2016 WL 4207993, at *3 (N.D. Tex. Aug. 10, 2016). "One

may be held vicariously liable for an infringing activity even if he is not the person actually carrying out the infringing activity if he has the right and ability to supervise the activity and also has a direct financial interest in it." *Cenorin, LLC v. Tacy Med., Inc.*, 2013 WL 1194473, at *3 (N.D. Tex. Mar. 25, 2013) (citation omitted).

> Specifically, a party with knowledge of infringing activity may be liable as a contributory infringer if he (1) intentionally induces, causes or materially contributes to the infringing conduct of another, or (2) or continues to supply a product knowing that the recipient is using the product to engage in trademark infringement.

*Choice Hotels, Int'l, Inc. v. Westhill Hotels I Ltd.*, 1996 WL 706876, at *4 (N.D. Tex. Dec. 4, 1996).

First, Defendants argue that because "Plaintiff's Complaint affirmatively confirms that Leao was an agent for the allegedly infringing party, Ranch Dress'n," "Plaintiff's contributory infringement claim fails for want of a 'third party' infringer." Doc. 11, Defs.' Mot., 18. Insofar as Defendants suggest that because Plaintiff has not adequately alleged infringement, Leao cannot be liable for contributory infringement, the argument fails. The Court declines to dismiss Plaintiff's complaint on any of Defendants' proposed grounds. To the extent that a contributory infringement claim depends on the viability of Plaintiff's remaining claims, those claims have not been dismissed. Thus, the Court will not dismiss Plaintiff's contributory liability claim against Leao on the ground that it lacks an anchor, so to speak. Insofar as Defendants suggest, however, that Leao cannot be deemed a contributory infringer because he is a primary infringer, the Court rejects this premise. Defendants cite no authority holding that one cannot both primarily and contributorily infringe a trademark, and the Court can find none.

Second, Defendants argue that Plaintiff "fails to assert any allegations against Leao that he intentionally caused or knowingly facilitated an infringement[.]" *Id.* The Court disagrees. Plaintiff

alleges that "Mr. Leao arranged for Ms. Taylor and Ranch Dress'n, LLC to import [the allegedly infringing saddles] from ProTec Horse," and has since then "actively promoted the goods bearing the MASTER SELAS mark on his personal social media accounts and elsewhere as identical to Master Saddles' goods sold under the MASTER SADDLES mark." Doc. 1, Compl., ¶¶ 40, 49. The Court finds that these allegations support a plausible inference that, if indeed Defendants' use of the Label infringes the Mark, Leao at least knowingly facilitated such infringement. The Court will not dismiss Plaintiff's contributory liability claim against Leao at this juncture.

D.    *Dismissal Under the First-Sale Doctrine Is Inappropriate at this Time.*

Finally, Defendants invoke the first-sale doctrine, arguing that Plaintiff's claims should be dismissed because "trademark law does not apply to Defendants' selling of the [s]addles at issue." Doc. 11, Defs.' Mot., 16. For the reasons that follow, the Court finds dismissal under the first-sale doctrine inappropriate at this time.

The first-sale doctrine acknowledges that "liability under the Lanham Act is predicated on the use of a trademark in a way that is likely to cause confusion." *Matrix Essentials*, 988 F.2d at 590 (quotation marks and citation omitted). Under the doctrine, "a reseller of genuine trademarked goods faces no trademark-related liability because a consumer buying genuine goods through a secondary seller 'gets exactly what the consumer bargains for, the genuine product of the particular producer.'" *First Fitness Int'l, Inc. v. Thomas*, 2008 WL 11349996, at *2 (N.D. Tex. June 13, 2008) (quoting *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995)). "It is important to note, however, that the first sale doctrine only exhausts a trademark owner's right to restrict the sale of 'genuine' goods. For example, the doctrine generally does not protect the resale of goods that

have been repackaged, reconstructed, or modified in some other material way." *Id.* at *3 (citation omitted).

As a preliminary matter, Plaintiff argues that "Defendants cannot rely on the first-sale doctrine," as it "is an affirmative defense that is not properly asserted in a Rule 12(b)(6) motion to dismiss." Doc. 14, Pl.'s Resp., 8. Assuming without deciding that the first-sale doctrine is an affirmative defense, the Court concludes that Defendants are permitted to raise it in their Rule 12(b)(6) motion. "A party may . . . assert an affirmative defense as a basis to dismiss a claim under Fed. R. Civ. P. 12(b)(6). But to succeed on such a defense . . . , the party must show that 'the facts alleged in [the operative] pleadings make clear that a claim is barred.'" *Pylant v. Cuba*, 2015 WL 12753669, at *3 (N.D. Tex. Mar. 6, 2015) (alteration in original) (citing *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 686 (E.D. Tex. 2009)). Thus, the Court disagrees with Plaintiff that it is improper for Defendants to raise the first-sale doctrine in their motion to dismiss.

Nonetheless, the Court finds dismissal under the doctrine inappropriate at this juncture. As noted above, the first-sale doctrine applies to the sale of genuine goods. Plaintiff clearly alleges that "Defendants' goods bearing the MASTER SELAS mark are not genuine MASTER SADDLES goods." Doc. 1, Compl., ¶ 47. Plaintiff further supports this contention with allegations as to how the saddles are different. *Id.* ¶¶ 44–46. Thus, the complaint does not "make clear that [Plaintiff's] claim[s] [are] barred." *Pylant*, 2015 WL 12753669, at *3 (citation omitted). The Court will not dismiss the complaint on the basis of the first-sale doctrine.

In sum, none of Defendants' proposed avenues for dismissal are availing. Thus, the Court **DENIES** Defendants' motion.

E.    *Plaintiff May Amend its Pleadings to Add Allegations Supporting the Doctrine of Gray-Market Goods and the Doctrine of Foreign Equivalents.*

As noted above, Plaintiff attempts to invoke in its response the doctrine of gray-market goods and the doctrine of foreign equivalents, but the Court rejects both as not fairly raised by Plaintiff's complaint. If Plaintiff intends to establish liability on the basis of either doctrine, Plaintiff must file an amended complaint that sufficiently alleges facts such that liability under those doctrines is plausible. Given that the live complaint is Plaintiff's first complaint in this matter, the Court finds it appropriate to *sua sponte* afford Plaintiff one opportunity to address these deficiencies. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). However, Plaintiff's permitted amendment is limited to addressing the deficiencies the Court has identified with respect to the doctrine of gray-market goods and the doctrine of foreign equivalents. Any amended complaint must be filed within **FOURTEEN (14)** days of the date of this Order.

## IV.

## CONCLUSION

For the foregoing reasons, the Rule 12(b)(6) motion to dismiss filed by Defendants Fallon Taylor, Joao Leao, and Ranch Dress'n LLC (Doc. 11) is **DENIED.** Nonetheless, Plaintiff may amend its complaint within the parameters identified above within **FOURTEEN (14)** days of the date of this Order.

**SO ORDERED.  SIGNED: May 6, 2021.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE